UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| U.S. BANK NATIONAL ASSOCIATION,<br><br>Interpleader Plaintiff,<br><br>v.<br><br>QUARTZBURG GOLD, LP, et al.,<br><br>Interpleader Defendants. | Case No. C20-993RSM<br><br>ORDER RE: MOTIONS FOR SUMMARY JUDGMENT |

## I.  INTRODUCTION

This interpleader action was filed by U.S. Bank National Association ("U.S. Bank") under Rule 22 for the Court to adjudicate conflicting claims from interpleader Defendants. *See* Dkt. #1.  The facts of this case are closely tied to those in *Chi Chen et al. v. U.S. Bank, NA et al.*, Case No. C16-1109-RSM.  In that now-resolved case, a dispute was brought by dozens of Chinese citizens against U.S. Bank over alleged mishandling of their funds deposited in escrow. The money was to be invested in a mining project to obtain EB-5 visas.  In this case, certain Interpleader Defendants argue that their funds have always been segregated and now move on summary judgment to have their funds returned to them; Interpleader Quartzburg Gold, LP ("Quartzburg") moves to have the funds released to it for the benefit of all investors, equally. The Court heard oral argument on these Motions on January 19, 2021.  For the reasons stated

ORDER RE: MOTIONS FOR SUMMARY JUDGMENT - 1

below, the Court finds that the funds are properly released to Quartzburg under existing case law, and GRANTS and DENIES the Summary Judgment Motions accordingly.

## II.   BACKGROUND

The Huang Defendants are citizens and residents of China. *See* Dkt. #56 ("McDonald Decl."), ¶ 2. As stated in U.S. Bank's Complaint in Interpleader, the Huang Defendants deposited $500,000 in the subject escrow account (the "Master Escrow Account") in October 2012. According to U.S. Bank's accounting, the Huang Defendants' $500,000 constitutes virtually all of the funds left in the account. *See id.* at ¶ 3, Ex. A.

They deposited this money according to the terms of the Master Escrow Agreement, the subject of over five years of litigation in this Court. *See Chi Chen et al. v. U.S. Bank, NA et al.*, Case No. 2:16-cv-01109-RSM (Western District of Washington) ("Chen"). The Master Escrow Agreement set terms for individual investors to deposit funds into escrow pending sufficient evidence of the approval of their EB-5 immigration applications, at which time funds were to be disbursed. *See* McDonald Decl. at ¶ 5, Exhibit B (Master Escrow Agreement), Schedule A, Exhibit I. Paragraph 4 of the Master Escrow Agreement provides that the "Escrow Agent shall disburse Escrow Funds … upon receipt of, and in accordance with a Written Direction." *See id.*, Exhibit B (Master Escrow Agreement), Schedule A, Exhibit I. Alternatively, investors could ask for a refund of their funds. *See id*. In that case, U.S. Bank would refund non-disbursed funds. *See* McDonald Decl., ¶ 9, Exhibit D (letter demonstrating refund process). When investors deposited funds into the escrow account, they received some documentation appearing to track those funds on an individualized basis. *See id.* at ¶ 7, Exhibit C. Whenever an investor requested a refund, U.S. Bank kept a record of each specific request. *See id*. at ¶ 9, Exhibit D. The Huang Defendants submit evidence of how U.S. Bank kept track of distributions of investor

ORDER RE: MOTIONS FOR SUMMARY JUDGMENT - 2

funds from escrow into the Quartzburg Gold LP project. *See id*. at ¶ 10, Exhibit E. This evidence is in the form of a declaration of Olaleye Fadahunsi, Business Escrow Analyst at U.S. Bank. This declarant states "for each written direction [to distribute], I would compare the list of names in the written direction to the names on my internal spreadsheet that I prepared and kept of Quartzburg investor names, to verify that the escrow account had received funds associated with each of those names sufficient to cover the disbursement directions and to confirm that those funds had not yet been disbursed." *Id.* at Exhibit E, ¶ 24. This declarant does not discuss an actual accounting of each investors' tracible funds exiting escrow.

As discussed in *Chen,* most of the money was erroneously distributed by U.S. Bank prior to the approval of the investors' EB-5 visas. During discovery in *Chen*, counsel for the Huang Defendants learned that funds remained in the Master Escrow Account. Shortly thereafter, the Huang Defendants demanded the return of their funds. U.S. Bank initiated this Interpleader Action for a determination of how it should distribute the Huang Defendants' funds. Quartzburg has requested U.S. Bank release the subject funds to Quartzburg. U.S. Bank has "remain[ed] neutral" on who or what should receive the funds. *See id.* at ¶ 3, Exhibit A.

On September 30, 2020, the Court granted U.S. Bank leave to deposit the remaining $491,116 in funds into the Court's registry, pursuant to a stipulation from the parties. *See* Dkt. #46.

### III.   DISCUSSION

**A. Legal Standard for Summary Judgment**

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Material facts are

those which might affect the outcome of the suit under governing law. *Anderson*, 477 U.S. at 248. In ruling on summary judgment, a court does not weigh evidence to determine the truth of the matter, but "only determine[s] whether there is a genuine issue for trial." *Crane v. Conoco, Inc.*, 41 F.3d 547, 549 (9th Cir. 1994) (citing *Federal Deposit Ins. Corp. v. O'Melveny & Meyers*, 969 F.2d 744, 747 (9th Cir. 1992)).

On a motion for summary judgment, the court views the evidence and draws inferences in the light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255; *Sullivan v. U.S. Dep't of the Navy*, 365 F.3d 827, 832 (9th Cir. 2004). The Court must draw all reasonable inferences in favor of the non-moving party. *See O'Melveny & Meyers*, 969 F.2d at 747, *rev'd on other grounds*, 512 U.S. 79 (1994). However, the nonmoving party must make a "sufficient showing on an essential element of her case with respect to which she has the burden of proof" to survive summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

B. Analysis

The Huang Defendants cite to *S.E.C. v. Path America, LLC*, 2016 WL 1385144 (W.D. Wa. April 6, 2016) ("Path America"). In that case, the Court noted that where funds were directly attributable to certain investors in an EB-5 immigration application program, those investors were entitled to a full and complete return of their funds after failure of the underlying project. *Path America* at *2 ("[T]he court has granted other investors' requests for the return of complete investments that remained segregated in escrow, and the court has entered a stipulated order that permits all investors whose entire $500,000.00 investment currently sits in escrow to obtain the return of their investments."). The Huang Defendants argue "if there is no trouble in assigning a specific individual investor's funds to that investor for distribution, and if it would not unduly prejudice other investors who were also damaged by the same fraud, then, as a

ORDER RE: MOTIONS FOR SUMMARY JUDGMENT - 4

matter of common sense, that investor should receive his or her funds." Dkt. #55 at 7. The Huang Defendants argue that their funds have always been pegged directly to them and segregated throughout the history of the Master Escrow Account's operation.

Quartzburg cites to the declaration of an appointed "Independent Monitor" that the funds of the investors were aggregated in the escrow account and payments were made to Quartzburg out of that account without being attributed to any specific investors.[1] *See* Dkt. #57 at 12–14 (citing Dkt. #57-1). Quartzburg argues that the Huang Defendants have failed to present adequate evidence that their funds were segregated in escrow. *Id.* at 15. Quartzburg cites cases indicating that equity demands pro rata distribution. Dkt. #57 at 18-20 (citing, *e.g.*, *United States v. Real Property Located at 13328 and 13324 State Highway 75 N.*, 89 F.3d 551, 553–54 (9th Cir. 1996)).

The Court, having reviewed the exhibits cited by the parties and listened to oral argument, finds that the Huang Defendants have failed to present sufficient evidence that their escrow deposit was segregated and not co-mingled for purposes of investing in this project. The records appear to show U.S. Bank's recordkeeping of who put money in and who requested refunds, but insufficient evidence as to whose money was actually being distributed in any given distribution to Quartzburg. The funds were essentially comingled. This is supported by the investigation and conclusions of the independent monitor from *SEC v. Muroff, et al., supra*. Even if the Huang Defendants had submitted adequate evidence that these remaining funds were tracible to their investment, the Court is convinced that this case is factually distinct from *Path America* and that equity would demand pro rata distribution under the line of cases cited in Quartzburg's briefing. The Court finds that allowing these individuals to receive their funds,

---

[1] This independent monitor "was engaged by the Quartzburg Entities, as required by the Final Judgment entered in the case *SEC v. Muroff, et al.*, 1:17-cv-00180-EJL (D. Idaho) (entered May 10, 2017)." Dkt. #57-1 at 2.

ORDER RE: MOTIONS FOR SUMMARY JUDGMENT - 5

previously comingled with the other investors and relied on by the Huang Defendants for the benefit of obtaining EB-5 visas, is not supported by case law and would be akin to allowing "one fraud victim to recover all of his losses at the expense of other victims" based solely on luck. *See SEC v. Bivona*, No. 16-cv-01386-EMC, 2017 U.S. Dist. LEXIS 148575, at *21 (N.D. Cal. Sep. 13, 2017) (citing *U.S. v. Wilson*, 659 F.3d 947, 956 (9th Cir. 2011)). Equity demands pro rata distribution instead. Accordingly, summary judgment will be granted in favor of Quartzburg.

## IV.   CONCLUSION

Having reviewed the relevant briefing and the remainder of the record, the Court hereby finds and ORDERS:

1) The Huang Defendants' Motion for Summary Judgment, Dkt. #55, is DENIED.
2) The Quartzburg Defendants' Motion for Summary Judgment, Dkt. #58, is GRANTED.
3) The Court directs Quartzburg to immediately submit a proposed order conforming to LCR 67(b) concerning the release of funds in registry and to email a Word version of such order to the Court.
4) This case is CLOSED.

DATED this 19th day of January, 2022.

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE

ORDER RE: MOTIONS FOR SUMMARY JUDGMENT - 6